IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00480-RM-SBP

RICHARD R. WONS, JR.,

    Plaintiff,

v.

THERMO FISHER SCIENTIFIC, INC.,

    Defendant.

---

### ORDER ON MOTION TO COMPEL

---

**Susan Prose, United States Magistrate Judge**

    This employment discrimination action comes before the court on Plaintiff Richard R. Wons, Jr.'s Motion to Compel, ECF No. 89 ("Motion to Compel" or "Motion"). Defendant Thermo Fisher Scientific, Inc. ("Thermo Fisher") responded, ECF No. 95 ("Response"), and Mr. Wons has replied, ECF No. 100 ("Reply"). This court considers the Motion pursuant to 28 U.S.C. § 636(b) after it was referred to the court by Senior United States District Judge Raymond Moore. ECF No. 91.

    For the reasons below, the Motion is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

    Mr. Wons was a sales representative employed by Thermo Fisher. He was suspended without pay and, ultimately, terminated from his employment in June 2022. Mr. Wons contends that Thermo Fisher refused to accommodate his religious beliefs regarding its mandatory COVID-19 vaccination and testing policies, and, as such, he was subjected to harassment,

1

discrimination, and retaliation. In his Amended Complaint, Mr. Wons brings religious employment discrimination claims under federal and state law. ECF No. 14.

As is relevant to this Motion, Mr. Wons submitted his First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission on February 14, 2024, ECF No. 89-1 ("First Set of Discovery"). After counsel conferred, Mr. Wons submitted his Second Set of Interrogatories, Requests for Production of Documents, and Requests for Admission on February 15, 2024, ECF No. 89-5 ("Second Set of Discovery"). Thermo Fisher responded to both sets of discovery requests. ECF Nos. 89-2 ("First Set of Discovery Responses"); 89-6 ("Second Set of Discovery Responses"). In March 2024, counsel for Thermo Fisher responded to Mr. Wons's deficiency letter with supplemental responses to certain interrogatories. ECF No. 89-4 ("March 2024 Letter").

Mr. Wons filed his Motion to Compel on May 31, 2024. On June 10, 2024, Thermo Fisher supplemented its responses to the First Set of Discovery, ECF No. 95-1 ("Supplemental Responses to First Set of Discovery"). And, on June 20, 2024, Thermo Fisher supplemented its responses to Mr. Wons's Second Set of Discovery, ECF No. 95-2 ("Supplemental Responses to Second Set of Discovery").

As a general matter, Mr. Wons asserts that Thermo Fisher has provided "deficient responses and repeated inadequate objections throughout all stages of discovery." Motion at 1. His Motion first focuses on Thermo Fisher's responses to interrogatories. Also at issue, though, are the allegedly inadequate responses provided by Ernest Law—Thermo Fisher's representative designated pursuant to Federal Rule of Civil Procedure 30(b)(6)—in his deposition testimony given on May 9, 2024. *Id.* at 9-10; ECF No. 90 ("Law Dep.").

2

Ultimately, Mr. Wons seeks an order directing Thermo Fisher to "submit substantive responses to the discovery requests," and allowing him to conduct an additional deposition "in which to question [Thermo Fisher] with a more appropriate, knowledgeable deponent that was both involved in [its] alleged accommodation process and part of its COVID Crisis Team." Motion at 11.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure set out discovery procedures that seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007) (citation omitted). Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain:

> [D]iscovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.*; *see also Mitcham v. Americold Logistics, LLC*, No. 17-cv-00808-WJM-NYW, 2017 WL 4163359, at *2 (D. Colo. Sept. 20, 2017) (Rule 26(b)(1) defines the scope of permissible discovery, permitting discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case).

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a), (b). Relevance

3

under Rule 26(b)(1) is "broadly construed" in relation to discovery, and a request is considered relevant "if there is 'any possibility' that the information sought may be relevant[.]" *Standon v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2423094, at *2 (D. Colo. June 4, 2013) (quoting *Cardenas v. Dorel Juv. Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)). The party opposing discovery "has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule 26], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (quoting *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004)).

In considering proportionality, Rule 26(b)(1) mandates that courts weigh the importance of the discovery to

> the issues at stake; the amount in controversy; the parties' relative access to information; the parties' resources; the importance of discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.*; *see also Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 274 (D. Colo. 2022). "The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations." *Carlson*, 341 F.R.D. at 275 (citing advisory committee's note to 2015 amendment). "Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery (1) does not fall within the scope of relevant evidence, or (2) is of such marginal relevance that the potential harm of discovery is outweighed by the benefit." *Id.* (citing *Simpson*, 220 F.R.D. at 356). "The objecting party cannot 'sustain this burden with

4

boilerplate claims that the requested discovery is oppressive, burdensome or harassing.'" *Id.* (citation omitted). "But when the relevance of a discovery request . . . is not apparent on the face of the request . . . itself, the proponent of the discovery bears the burden of making an initial showing of relevance." *Id.* (citing *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

"'[D]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb them absent 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Kenno v. Colo. Governor's Office of Info. Tech.*, Nos. 21-1353, 21-1434, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023), *cert. denied*, 144 S. Ct. 696 (2024) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

## ANALYSIS

### I. Thermo Fisher's Responses to Interrogatories

Mr. Wons alleges that Thermo Fisher failed to adequately respond to Interrogatories 5, 14, 15, 16, and 17. The court will address each in turn.

*Interrogatory No. 5.* Interrogatory No. 5 asks Thermo Fisher to

> IDENTIFY all departments, divisions, and/or facilities and categories of EMPLOYEES, to which YOUR VACCINE MANDATE did not apply or was not enforced as a condition of EMPLOYMENT.

First Set of Discovery at 7.

5

In its initial answer, Thermo Fisher objected on the basis that Interrogatory No. 5 was "overly broad, unduly burdensome and seeking information that is neither relevant to the subject matter of this action nor proportional to the needs of this case . . . because it seeks information about non-party witnesses that are not similarly situated to [Mr. Wons]." First Set of Discovery Responses at 5. It then went on to respond that

> the vaccine mandate did not apply to certain groups of employees in specific work locations. *See* TFS000171. [Mr. Wons], as a sales representative in the Account Management group, was required to abide by the vaccine mandate. Also, all United States employees were required to disclose their COVID-19 vaccination status.

*Id.*

In its March 2024 Letter, Thermo Fisher asserted that "TFS000171 provides the requested information." March 2024 Letter at 1. When pressed by Mr. Wons for additional information, Thermo Fisher stated that it

> again directs [Mr. Wons] to TFS000171 and further clarifies that [it] did not impose a vaccine mandate on all its employees. Only employees situated in the United States and Canada who belonged to the Field Service and Sales job families referenced in the chart in TFS000171 were subject to the vaccine mandate. Additionally, employees in the Customer Support > Technical Applications job family, United States employees in the E-Bands (11-13), and employees situated in Waltham, Massachusetts were subject to the vaccine mandate.

Supplemental Responses to First Set of Discovery at 6-7.

Mr. Wons argues that TFS000171 consists of a single PowerPoint slide that contains exempt divisions of Thermo Fisher. He maintains that the slide failed to provide a "complete response" and "left him to wonder whether additional categories of employees . . . may have been exempt from the vaccine mandate." Motion at 3. Thermo Fisher responds that TFS000171 provides a list of its divisions (internally known as job families) that were subject to its vaccine

6

mandate. Response at 2. As such, Thermo Fisher asserts that it answered Interrogatory No. 5, and Mr. Wons's "wondering" if this is not the case does not render the response deficient.

This court respectfully disagrees with Mr. Wons that the answer provided by Thermo Fisher to Interrogatory No. 5 is deficient. In response to the question of which employees were subject to the vaccine mandate, Thermo Fisher provided a list of the affected departments. Mr. Wons's concern or doubt about the complete nature of that response is unsupported by any evidence beyond speculation.[1] *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105 (10th Cir. 2012) (plaintiff's comment that they "were left to wonder what they may have learned and how that information may have altered the court's decision" was "perilously close to conceding an attempt to use discovery as a fishing expedition") (citation and internal quotation marks omitted).

To the extent that Mr. Wons alleges that Thermo Fisher has not stated that it knows of no further information it can provide, as set out in Reply at 2 n.1 by citing *Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc.*, 64 F.R.D. 459, 461 (S.D.N.Y. 1974), Thermo Fisher has indicated that it has identified all the categories of employees who were subjected to its vaccine mandate. *See* Response at 2 ("[Thermo Fisher's] response to Interrogatory No. 5 is complete and there is no additional information within [its] control or possession to supplement."). As a result, Mr. Wons's request for more information in response to Interrogatory

---

[1] Similarly, to the extent Mr. Wons suggests that Mr. Law's deposition testimony reveals that Thermo Fisher is withholding information regarding the categories of employees—in that he testified that Thermo Fisher "considered an employee's worksite designation, rather than actual location, when imposing its vaccination mandate," Reply at 2—such testimony does not appear to support an allegation of withheld information.

7

No. 5 is denied.

***Interrogatory No. 14.*** Mr. Wons also argues that Thermo Fisher has failed to adequately respond to Interrogatory No. 14, which requests that Thermo Fisher

> IDENTIFY all U.S. EMPLOYEES who requested accommodations from the VACCINE MANDATE and/or ACCOMMODATION TESTING. For each EMPLOYEE identified in this response, please list the type(s) of accommodation requested, the EMPLOYEE's job title, the EMPLOYEE's job duties, whether the EMPLOYEE was a remote EMPLOYEE, whether the request was granted or denied and why, and what accommodations were provided.

First Set of Discovery at 8-9. When propounding this interrogatory, Mr. Wons noted that "[w]e can discuss anonymizing this information before you answer Interrogatory number 14." *Id.* at 9.

Although Thermo Fisher objected on the grounds that Interrogatory No. 14 "seeks confidential health-related information of other employees[,]" it referred Mr. Wons to "the anonymized information contained within the documents bates labeled TFS000172-TFS000191." First Set of Discovery Responses at 12.

In addition, Thermo Fisher stated in the March 2024 Letter:

> Thermo Fisher's database that stores the accommodation request information for this time period is archived. This database is secure and difficult to access. The information previously disclosed and referred to in the documents bates labeled TFS000172-TFS000191 is the only information that Thermo Fisher can pull from this database. Thermo Fisher cannot input additional search criteria such as job title, job duties, remote status, and whether the accommodation was granted or denied and why.
>
> To access that information Thermo Fisher would have to refer to the documents produced in TFS000172-TFS000191, note the names of over 350 employees, take these names and insert them one-by-one into a different database to acquire the job title of each employee. To acquire information relevant to the job duties and remote status of each of these over 350 employees, Thermo Fisher would have to collect documents to describe the duties and expectations of each job and tailor them to the

8

> relevant time period. This would be an expensive and unduly burdensome process that is disproportional to the needs of this case. Contrary to Mr. Wons's assertion, the job duties of each employee who requested a reasonable accommodation—employees of all different job titles—has no bearing on his retaliation claims. Mr. Wons is fully aware of the expectations of his own role, which would be the same role as his true comparator employees.
>
> Even so, Thermo Fisher refers Mr. Wons to the documents bates labeled TFS000305. The three employees referenced in this document are the only three employees whose requests for an accommodation to the vaccine mandate and/or accommodation testing were denied.

March 2024 Letter at 4-5 (cleaned up)

In its Supplemental Responses to First Set of Discovery, Thermo Fisher again objected on the basis that Interrogatory 14 was unduly burdensome and that "the information sought is irrelevant and unreasonably cumulative as it seeks *all* employee requests including employees who are not similarly situated to [Mr. Wons]." Supplemental Responses to First Set of Discovery at 19 (emphasis in original). In addition, it argued that Mr. Wons's "request for an accommodation to the vaccine mandate was conditionally granted. Therefore, any evidence pertaining to the approval or denial of other employees' vaccine mandate accommodation requests is irrelevant." *Id.*

> Without waiving these objections, Thermo Fisher
>
> supplement[ed] with TFS000436-TFS000502. The information produced within these documents are the employees who requested accommodations from any testing requirement, either as an accommodation to the vaccine mandate or as part of the testing requirements for individuals working at [Thermo Fisher] worksites. The type of accommodation requested, the employee's job title, whether the employee was subject to the vaccine mandate, and the work notes from the case are included. Job duties for individuals is not maintained in any type of data platform

9

that can be pulled readily. **If [Mr. Wons] identifies specific individuals for which he would like the job duties for, TFS will pull those specific job duties**.

*Id.* at 19-20 (emphasis added).

Mr. Wons does not challenge Thermo Fisher's assertion that it has provided a list of the individuals who requested any kind of accommodation for any reason. However, Mr. Wons maintains that this information still lacks details of the decision-making process; specifically, "why" the requests were denied or granted, and "what" accommodations were provided. Reply at 3. In so arguing, Mr. Wons asks the court to compare the list of employees who requested accommodation initially produced by Thermo Fisher (TFS000172–191), with the supplemented list (TFS000436-502), which Thermo Fisher has said includes "[t]he type of accommodation requested, the employee's job title, whether the employee was subject to the vaccine mandate, and the work notes from the case." Supplemental Responses to Second Set of Discovery at 19-20.

Yet, there is no indication that Mr. Wons took Thermo Fisher up on its offer that it would provide specific job duties for specific individuals. Nor has Mr. Wons cabined his request in any other way. Because he has not received any of the information subject to his outstanding request, Mr. Wons can only speculate as to how this information would be relevant. Before requiring Thermo Fisher to undertake the extensive burden it has outlined, the court would have expected Mr. Wons to have agreed to less onerous measures and then sought the remaining information once he had some basis to justify the significant burden attendant on his original request. Instead, Mr. Wons comes to the court with an underdeveloped argument for why Thermo Fisher and the court must engage in extensive efforts to provide to him a slew of information that may only be tangentially related to his claims.

10

Mr. Wons's strategy here places the court in a conundrum. On the one hand, Mr. Wons's failure to meaningfully engage in follow-up conversations with Thermo-Fisher warrants no praise. On the other, Thermo Fisher's good faith offer to "ident[y] specific individuals for which [Mr. Wons] would like the job duties" and to "pull those specific job duties" signals an understanding on Thermo Fisher's part that the job duties of particular persons may bear some relevance, however negligible, to Mr. Wons's claims, and that Thermo Fisher would not be unduly burdened by producing a limited subset of that information.

After weighing the burden associated with producing everything that Mr. Wons demands against its limited relevance, the court exercises its broad discretion over the discovery process by ordering that Mr. Wons be allowed to select **35 individuals** (ten percent of the total employees) from the list; Thermo Fisher shall produce the "specific job duties" for this subset of 35 individuals only. Further, Thermo Fisher shall provide information regarding whether these individuals worked remotely. The parties shall work collaboratively to expeditiously complete the transfer of this information.

Mr. Wons's request to compel further information in response to Interrogatory No. 14 is otherwise denied.

*Interrogatory No. 15.* Mr. Wons next argues that Thermo Fisher should be required to obtain its "COVID-tracking" data in response to Interrogatory No. 15, propounded in his Second Set of Discovery, which asks that Thermo Fisher

> [s]tate whether YOU kept records of any type regarding EMPLOYEES who YOU learned or were told had tested positive for COVID-19 during the time YOUR

11

> VACCINATION MANDATE was in effect and, as applicable, the dates YOU first learned, or were told, of all such positive tests.

Second Set of Discovery at 6.

In its answer, Thermo Fisher indicated that it kept records of employees who tested positive for COVID-19 from tests it provided during the time its vaccine mandate was in effect. Second Set of Discovery Responses at 3. It objected to the request to provide the dates it first learned of *all* positive tests during the vaccination mandate period as "overly broad, unduly burdensome, and disproportionate to the needs of this case." *Id.* It went on to answer that:

> Thermo Fisher was notified when an employee tested positive for COVID-19 from its own testing protocols on a rolling basis. For example, each day during the vaccine mandate period Thermo Fisher may have been notified of at least one employee's positive COVID-19 test result. Thermo Fisher would then notify the employee of their positive test result and communicate any trace and tracking protocols. As such, responding to this Interrogatory with each date of each positive COVID-19 test would be unduly burdensome. Moreover, the results of this report contain confidential health information that cannot be disclosed, and even if they were disclosed, have no bearing on the claims or defenses of this case.

*Id.* at 3-4 (cleaned up). In its Supplemental Responses to Second Set of Discovery, Thermo Fisher clarified that it

> contracted with third party vendors to provide Covid-19 tests, process the tests, manage the data of the test results, and notify [it] and its employees of the test results. These vendors were CareEvolve, Everlywell, and Color.
> . . .
> While these vendors are required to maintain the data for litigation purposes for 10 years, [Thermo Fisher] no longer has access to this information as the contracts with these vendors have expired. To access this information, [Thermo Fisher] would have to re-enter contractual agreements with these vendors and renegotiate the terms.

Supplemental Responses to Second Set of Discovery at 4.

12

Mr. Wons argues that the information exists, but that Thermo Fisher "simply does not want to produce it." Motion at 7. He further maintains that it is "highly relevant" to an evaluation of Thermo Fisher's accommodation process and whether Mr. Wons's request for accommodation imposed an undue hardship. *Id.* Mr. Wons asserts that Thermo Fisher must produce the information because it is an "enormous corporation," and, as such, requiring it to initiate new contracts with its former vendors to obtain the information requested would not be unduly burdensome. Reply at 3-4. Thermo Fisher argues, in response, that the "sheer volume of the confidential health information would be staggering, minimally relevant to [Mr. Wons's] claims, and burdensome to anonymize or retract." Response at 4 (footnote omitted).

The details of Thermo Fisher's COVID-tracking data—information as to when and how other employees were contracting COVID, the manner in which Thermo Fisher responded to each employee's result, and their exposure to the virus in connection with their job duties at Thermo Fisher—may bear some minimal relevance to Mr. Wons's argument that Thermo Fisher had the ability to accommodate his vaccine mandate requests. However, the court agrees with Thermo Fisher that the proportional burden of compiling this likely inconsequential data outweighs its potential benefit. *See Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014) (ruling that application of the proportionality factors requires that counsel and, ultimately, the court "first must consider whether the desired information is relevant to the claims and defenses in the action, and then ask whether the proposed discovery is proportional to the needs of the case or unduly burdensome or expensive based upon an assessment of various factors") (citation omitted). Thermo Fisher may have the resources to access the requested information, but that is not dispositive of the court's analysis where there appears to be little (if any)

13

connection between the COVID-tracking data and Thermo Fisher's decisions in the accommodation process.

Mr. Wons's request to compel additional information in response to Interrogatory No. 15 is denied.

***Interrogatories 16 and 17.*** Mr. Wons next argues that Thermo Fisher has failed to provide a sufficient response to Interrogatories 16 and 17 in his Second Set of Discovery. Those interrogatories ask Thermo Fisher to

> IDENTIFY any burden associated with MR. WONS'S request for accommodation of this religious exemption by submitting to non-invasive "spit" tests, as opposed to nasal swab tests.
>
> * * *
>
> IDENTIFY any burden associated with accommodation of religious exemption by requiring regular testing by nasal swab.

Second Set of Discovery at 6.

Thermo Fisher, in its initial answer, objected that these interrogatories were vague and overly broad as to "any burden," and indicated that the information sought was irrelevant and not the basis for any claim asserted. Second Set of Discovery Responses at 4-5.

However, after Mr. Wons offered some clarification as to the information sought, Thermo Fisher stated with regard the Interrogatory No. 16:

> While Thermo Fisher maintains its objection regarding the burden analysis and its relevance to the request for a spit test, Thermo Fisher further provides that Mr. Wons did not request a spit test as opposed to a nasal swab test due to a sincerely held religious belief. As such, Thermo Fisher did not evaluate the burden of providing a spit test as opposed to a nasal swab test for Mr. Wons. Moreover, CareEvolve, Everlywell, and Color did not provide spit tests as part of their agreements with Thermo Fisher at the time they were facilitating the employee testing process. Spit tests were not readily available nor validated through these vendors. Moreover, nasal swab tests were regarded as the "gold standard" in terms

14

>of effectiveness and reliability during a time when the Covid-19 virus frequently mutated into different variants. To provide a Field Services employee with weekly spit tests would require Thermo Fisher to engage with another vendor who could manage the shipping, distribution, result tracking and reporting logistics as it could not do this independently.

Supplemental Responses to Second Set of Discovery at 5 (cleaned up, emphasis added).

With regard to Interrogatory No. 17, Thermo Fisher responded that it

>partnered with CareEvolve, Everlywell, and Color to facilitate the nasal swab test distribution, test processing, tracking of results, and securing the confidential health data.

*Id.* at 6.

Mr. Wons contends that Interrogatories 16 and 17 ask Thermo Fisher to identify the relative burden of nasal testing, as opposed to spit testing, and asserts that Thermo Fisher has not adequately responded. He asserts this evidence is relevant to the viability of his requested accommodation, and Thermo Fisher's ability to accommodate the request. *See generally Equal Emp. Opportunity Comm'n v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1318 (D. Colo. 2015) (employer's rebuttal burden, following the employee's *prima facie* showing, includes showing "that it was unable to accommodate the employee's religious needs reasonably without undue hardship.") (citing *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1156 (10th Cir. 2000)).

This court respectfully disagrees that Thermo Fisher's response was inadequate. Thermo Fisher has responded (1) that it did not identify the relative burden of providing a spit test as opposed to a nasal swab test at the time of Mr. Wons's request (along with the reason why it did not do so); (2) that its contract with the vendors did not provide spit tests as part of their agreements, and that spit tests were neither readily available nor validated through these vendors;

and (3) that to provide a Field Services employee with weekly spit tests would require Thermo Fisher to engage with another vendor who could manage the shipping, distribution, result tracking and reporting logistics of spit tests. This response is sufficient to answer Mr. Wons's request to identify the burden incurred by Thermo Fisher of providing a spit test, as opposed to nasal swab tests, to Mr. Wons and any other employees who requested such accommodation.

At bottom, it appears that Mr. Wons's desire for additional responses to these interrogatories is motivated not so much by their lack of completeness but by his dissatisfaction with their content. That, obviously, is not a valid basis for compelling further responses, and the court respectfully declines to do so.

## II.     Responses to Rule 30(b)(6) Deposition Questions

Next, the court addresses Mr. Wons's request that he be allowed an additional deposition of Thermo Fisher's Rule 30(b)(6) designee. Prior to Mr. Law's deposition, counsel discussed deposition topics. As the court would later learn at the latest discovery hearing, the parties were unable to agree on the list of topics.[2] Due to "rescheduling burdens," however, the deposition went forward on May 9, 2024. Motion at 9 n.6.

In his Motion, Mr. Wons points to the numerous objections during the depositions by Thermo Fisher's counsel; Mr. Law's alleged dearth of knowledge about the noticed topics; and Mr. Laws purportedly obstructionist behavior in responding to questions. *Id.* at 9. Mr. Wons also alleges that Mr. Law was improperly coached by counsel and that his "evasive non-responsive

---

[2] Mr. Wons insists that the parties did not fully agree to a different set of topics from those in his original notice, which the court attaches as an appendix to this Order. Thermo Fisher, on the other hand, maintains that the parties agreed to a narrower set of topics. *See* ECF No. 95-3.

16

answers," combined with Thermo Fisher's previous inability or unwillingness to provide acceptable responses to written discovery, "results in extreme prejudice" to Mr. Wons's ability to prosecute his case. *Id.* at 9-10. Respectfully, the record largely belies Mr. Wons's contentions.

At the most recent discovery hearing, *see* ECF No. 138, the parties presented 58 contested points in the deposition in a chart that includes the relevant questions and responses. It also includes the parties' positions as to why the question or response was proper or improper. To most efficiently address each aspect of the parties' dispute, the court has adopted the chart (attached in the appendix to this Order) and includes its ruling on each of the 58 disputes in a column added to the chart entitled "Court's Ruling/Explanation."[3]

As the chart reflects, this court finds that most of the disputed questions—including those that fell outside the scope of the noticed topics—were sufficiently answered. There are, however, approximately a dozen questions that the court believes must be answered in a more fulsome manner. Accordingly, the court grants Mr. Wons leave to take a supplemental deposition of Thermo Fisher under Rule 30(b)(6) subject to the following conditions:

(1) The deposition shall take place remotely by videoconference or in a manner agreed to by the parties;

(2) The deposition may not exceed **120 minutes of on-the-record questioning/testimony** if Thermo Fisher redesignates Mr. Law as its representative.

---

[3] Thermo Fisher objected to most of the questions on the ground that the question was outside the scope of the noticed topics. Although the parties still disagree on the precise scope of the Rule 30(b)(6) topics, the court was not obliged to resolve that dispute (and did not have extensive briefing on the issue). Instead, the court has evaluated the 58 disputes based on Mr. Wons's original deposition notice. Even based on Mr. Wons's arguably broader notice, the court finds that there are very few areas of inquiry that warrant further questioning.

>   If Thermo Fisher designates a different representative, the deposition may not exceed **150 minutes of on-the-record questioning/testimony**;
>
> (3) Mr. Wons's questioning shall be limited to the specific questions noted by the court in the chart at Entry Nos. 4, 6, 9, 23, 27-29, 31-34, 39, and 55, and questions which reasonably fall under the following topics:
>
>> (a) Mr. Wons's employment record, performance, and qualifications;
>>
>> (b) Thermo Fisher's response to COVID-19, including but not limited to, its policies, how it developed those policies, and accommodations allowed pursuant to those policies; and
>>
>> (c) Thermo Fisher's handling of Mr. Wons's requests for accommodations.

Additionally, Mr. Wons may submit one interrogatory **or** one request for production related to Entry No. 25, which asked about written documents utilized by Thermo Fisher in developing certain policies. The parties are further directed to confer regarding Entry No. 32, which asked if the "portal form" contained a question regarding the employee's willingness to wear a mask and test for COVID. The court expects the parties to informally resolve this straightforward issue about the contents of a Thermo Fisher form. Lastly, the parties shall confer regarding the current deadlines and the need for any extensions.

The court respectfully directs the parties to engage in good faith to complete this limited remaining discovery in a timely and efficient manner. That includes asking clearly-articulated questions that fall within the parameters of this order at the supplemental deposition and refraining from making unnecessary objections during that deposition.

**III.     Request for Attorney's Fees**

Finally, in light of the ruling on the merits of the Motion, the court respectfully denies Mr. Wons's request for an award of his attorney's fees and costs. *See Murphy v. Schaible, Russo & Co., C.P.As, LLP*, No. 19-cv-02808-WJM-NYW, 2020 WL 12698695, at *6 (D. Colo. Nov. 20, 2020) (refusing to award attorney's fees and costs given the "mixed outcome" of the discovery motions "and the lack of any substantive arguments regarding the award of expenses or costs").

## CONCLUSION

For the reasons above, the Motion to Compel (ECF No. 89) is **GRANTED in part** and **DENIED in part**.[4]

DATED: October 23, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[4] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").