IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 23-cv-00480-RM-SBP

RICHARD R. WONS, JR.,

    Plaintiff,

v.

THERMO FISHER SCIENTIFIC, INC.,

    Defendant.

---

**ORDER**

---

This employment case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 109) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 147). The Motions have been briefed and are ripe for review. (ECF Nos. 128, 135, 149, 151, 155, 157.) For the reasons below, Defendant's Motion is granted, and Plaintiff's Motion denied as moot.

**I.      LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of his claim, the burden shifts to him to set forth specific facts showing that there is a genuine issue for trial. *See id.* If he fails to make a sufficient showing to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

## II.   BACKGROUND

Plaintiff, who is a Christian, was terminated from his job as a sales representative because he refused to comply with the vaccination policy Defendant enacted in response to the COVID-19 pandemic. This case involves three components of the policy. First, Defendant implemented a *disclosure requirement*, requiring employees to disclose their vaccination status. Second, Defendant implemented a *vaccination requirement*, requiring most of its employees, including

Plaintiff, to be fully vaccinated against COVID-19.  Third, Defendant implemented a *testing requirement*, requiring employees who were not vaccinated to test weekly via nasal swab, among other measures.  The following timeline outlines the relevant events.

- When the first COVID-19 vaccine was released in December 2020, Defendant encouraged its employees to get vaccinated.  (ECF No. 136, ¶¶ 5, 7.)

- Beginning in September 2021, vaccination was mandated for government contractors such as Defendant.  (*Id.* at ¶ 10.)

- On October 13, 2021, Defendant implemented its *disclosure requirement*, requiring its employees to disclose their vaccination status by the end of the month.  (*Id.* at ¶ 11.)

- On November 10, 2021, Defendant implemented its *vaccination requirement*, requiring certain segments of its workforce, which included Plaintiff, to vaccinate.  (*Id.* at ¶¶ 19, 21.)  Soon afterward, Defendant began accepting applications for accommodations from employees who planned to remain unvaccinated due to a certified medical condition or sincerely held religious belief.  (*Id.* at ¶ 27; ECF No. 112-12 at 2.)

- Despite several reminders from Defendant about the *disclosure requirement*, Plaintiff did not comply; as a result, he received a final written warning on November 23, 2021.  (ECF No. 136, ¶ 18.)  The warning states that Plaintiff could be terminated for failing to comply with the *disclosure requirement* and that he would be ineligible for promotion or transfer within the company for one year.  (ECF No. 112-6 at 1.)  In addition, the warning states that Plaintiff would be required to wear an approved face covering while on premises and submit to weekly testing.  (*Id.*)

- On the same day, Plaintiff requested a religious accommodation request form.  (ECF No. 136, ¶ 18.)  He submitted his completed form on November 26, stating as follows:

    > My sincerely held religious beliefs for not getting the COVID shot are related to the mark of the beast and that my body is a temple of the Holy Spirit.  I cannot knowingly and willingly inject my body with something that may be harmful . . . or potentially dangerous.  More specific details of these beliefs do not concern Thermo Fisher as they are my beliefs and protected by the Constitution of the United States and not subject to scrutiny.
    >
    > I am willing to wear a mask for a limited amount of time but cannot for prolonged periods due to medical reasons.  Weekly testing is not necessary as I am remote.  I am willing to test for customer visits as needed using spit tests.

> Finally, the purpose of the COVID shot is to illicit an immune response from the body to produce antibodies. My body naturally produced antibodies (confirmed this month) after having COVID. I should be treated the same as someone who has obtained antibodies via a COVID shot, and to force, threaten, or subject me to additional measures is discrimination and coercion.

(ECF No. 129-7 at 1-2.)

- On December 16, 2021, Defendant conditionally approved Plaintiff's request for a religious accommodation to the *vaccination requirement* while informing him that he would be required to comply with its *testing requirement* by submitting to weekly testing, maintaining social distancing when possible and wearing an approved face covering while on-site, and signing an acknowledgement form. (ECF No. 129-13 at 3.)

- On December 22, 2021, Plaintiff emailed Defendant several questions about testing and masking, including whether "non-invasive spit tests" were available. (ECF No. 112-14 at 2.)

- On February 1, 2022, Defendant responded by email to Plaintiff's questions and provided a link to frequently asked questions about its COVID-19 policies. (*Id.* at 1.) Regarding Plaintiff's inquiry about spit tests, the email states, "The testing procedure is a standardized procedure, whether done on-site or at home. We are not deviating from that process at this time." (*Id.* at 2.) The email further states that "[a]ccommodation requests are considered for each employee individually." (*Id.*)

- On February 9, 2022, Plaintiff signed the acknowledgement form included in the letter conditionally approving his request for accommodation from the vaccination requirement, but he altered the document by striking through portions pertaining to Defendant's testing requirement and by adding language stating: "I am remote. I do not consent—not a reasonable accommodation"; "threatening an employee with unpaid leave and/or termination constitutes unlawful coercion and violates my right to informed consent to medical treatment"; and "not applicable—I am remote." (ECF No. 112-4 at 1.)

- On February 16, 2022, Plaintiff applied for an internal job transfer. (ECF No. 136, ¶ 65.) Defendant determined he was ineligible for the transfer because of the final written warning he had received on November 23. (*Id.* at ¶ 66.)

- On February 22, 2022, Defendant notified Plaintiff that it was denying his request for accommodation from the *testing requirement* because he "failed to state a sincerely held religious belief and/or granting a[] testing accommodation would result in an undue hardship on the Company." (ECF No. 129-18 at 1.)

4

- On March 3, 2022, Defendant notified Plaintiff that it was denying his request for accommodation from the *vaccination requirement* because he "refused to comply with the testing requirement of the accommodation." (ECF No. 126-26 at 1.)

- On March 7, 2022, Plaintiff informed Defendant he had decided to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 136, ¶ 68.) On the same day, he complained to his manager that his sales forecast appeared to be unreasonably high. (*Id.* at ¶ 69.)

- On May 10, 2022, Plaintiff filed his EEOC charge. (*Id.* at ¶ 84.)

- On May 11, 2022, Defendant informed Plaintiff he would be placed on unpaid leave for failing to comply with the *vaccination requirement*. (*Id.* at ¶ 74.) His unpaid leave began on May 16. (*Id.* at ¶ 75.)

- On June 22, 2022, Plaintiff was terminated. (*Id.* at 136, ¶ 77.) His termination letter states, in relevant part, as follows:

    > You were informed that the Company is willing to grant you an accommodation to our COVID-19 vaccination mandate, subject to our weekly testing requirement. Since you did not complete our reasonable accommodation form and have not agreed to weekly COVID-19 testing, your accommodation is not approved and you are not in compliance with our vaccination mandate.

    (ECF No. 112-7 at 1.)

In his Amended Complaint, Plaintiff contends that Defendant refused to accommodate his religious beliefs in connection with its *vaccination* and *testing requirements,* and he asserts claims for religious discrimination, retaliation, and wrongful termination.

Defendant contends that it offered to accommodate Plaintiff's opposition to the *vaccination requirement* if he agreed to comply with its *testing requirement* and that Plaintiff was eventually fired for failing to comply with either requirement.

### III. ANALYSIS

#### A. Discrimination Claims

Plaintiff asserts three religious discrimination claims: two for failure to accommodate under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act ("CADA") (ECF No. 14, ¶¶ 68-89; 138-154) and one for disparate treatment (*id.* at ¶¶ 90-120). The same legal standards apply to Plaintiff's claims for religious discrimination under Title VII and CADA. *See Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1107 n.2 (D. Colo. 2021).

##### 1. Failure to Accommodate

Title VII "requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023) (quoting 42 U.S.C. § 2000e(j)); *see also Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018). To survive summary judgment on a religious discrimination claim of failure to accommodate, the employee must make a prima facie case by showing that (1) he had a bona fide religious belief that conflicts with an employment requirement, (2) he informed his employer of this belief, and (3) he was fired for failure to comply with the conflicting employment requirement. *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). If the employee establishes his prima facie case, the burden shifts to the employer to rebut the prima facie case or to show that it offered a reasonable accommodation or was unable to accommodate the employee's religious needs without undue hardship. *Id.* at 1156.

a. *Vaccination requirement*

The Court begins with Plaintiff's claims for failure to accommodate based on Defendant's vaccination requirement. For present purposes, the Court finds Plaintiff has established his prima facie case because he informed Defendant—via the religious accommodation request form he submitted on November 26—that getting the COVID-19 vaccine conflicted with his sincerely held religious beliefs, and he was ultimately terminated. But the Court also finds that Defendant offered a reasonable accommodation to the vaccination requirement: weekly nasal swab testing along with masking and social distancing. Although Plaintiff objected to the form of testing and sought alternative accommodations, he has adduced no evidence that the accommodation Defendant offered was unreasonable.

"'Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee.'" *Barrington*, 566 F. Supp. 3d at 1108 (quoting *Bruff v. N. Miss. Health Servs., Inc.*, 244 F. 3d 495, 501 (5th Cir. 2001)). Rather, "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986).

Here, Defendant offered to accommodate Plaintiff's opposition to getting vaccinated by offering weekly nasal swab testing and other specified measures as an alternative to vaccination. Plaintiff did not accept the accommodation offered. Instead, he responded by questioning the necessity of the testing requirement on various non-religious grounds and expressing a preference for spit testing. But Defendant was not required to accommodate Plaintiff on his own terms. *See Tabura*, 880 F.3d at 551. After all, "Title VII expressly requires only that an

employer reasonably accommodate an employee's religion." *Id.* at 552 (quotation omitted). Plaintiff has adduced no evidence creating a genuine issue that nasal swab testing was not a reasonable accommodation in response to Plaintiff's religious objection to receiving the vaccine. In the absence of such evidence, his contentions that Defendant failed to engage further in the interactive process or offer alternative accommodations based on his various non-religious disagreements with the vaccination policy as applied to him are unavailing. *See Ansonia*, 479 U.S. at 68 ("[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation."). Because Defendant met its obligation to provide a reasonable accommodation—again, Plaintiff offers no evidence to the contrary—it is entitled to summary judgment on Plaintiff's claims for failure to accommodate to the extent they are premised on the vaccination requirement.

        b.        *Testing requirement*

With respect to Defendant's testing requirement, Plaintiff cannot establish a prima facie claim because he has not shown that he informed Defendant that nasal swab testing conflicted with his religious beliefs.

Plaintiff's citation to the religious accommodation request form he submitted on November 26, the pertinent portion of which is quoted in the timeline above, is unavailing. Although Plaintiff expressed his opposition to getting vaccinated for religious reasons, his opposition to Defendant's testing requirement was based on other, non-religious concerns. He stated that he believed weekly testing was "not necessary" because he was working remotely, that he was willing to use spit tests for customer visits, and that he had acquired natural immunity by having had COVID. (ECF No. 129-7 at 2.) But such statements are insufficient to inform Defendant that he opposed nasal swab testing for religious reasons. Nor is the Court

8

persuaded by Plaintiff's contention that when he raised these concerns it was "painfully obvious" he was raising a religious objection to nasal swab testing. (ECF No. 136, ¶ 52) Title VII requires an employer to engage in the interactive process for finding an accommodation when an employee opposes a policy based on his protected status—in this case, his religion—but it does not require the employer to do so whenever an employee opposes or expresses disagreement with one of its policies. Plaintiff cites no authority to the contrary.

Plaintiff also cites his email correspondence with Defendant as evidence that he objected to nasal swab testing for religious reasons. But none of the emails he cites mentions nasal swab testing at all, much less explains how it conflicts with his sincerely held religious beliefs. Only two references to testing appear to have potential relevance: first, in an email sent on December 22, 2021, Plaintiff asked, "Are non-invasive spit tests also available?" (ECF No. 129-11 at 3); and, second, in a follow-up email sent on February 11, 2022, Plaintiff declared, "I do not consent to invasive weekly testing" (*id.* at 1). But merely implying a preference for spit testing and referring to testing as "invasive" is not enough to trigger Defendant's obligation to engage in the interactive process for finding a reasonable accommodation. The Court finds these oblique comments about testing are insufficient to have put Defendant on notice that its testing requirement somehow conflicted with Plaintiff's religious beliefs. *Cf. Prida v. Option Care Enters., Inc.*, 2025 WL 460206, at *5 (6th Cir. Feb. 11, 2025) (unpublished) (concluding the plaintiff stated a claim for religious discrimination and failure to accommodate by persistently and consistently communicating that her refusal to take COVID-19 tests was based on her

9

religious beliefs).[1] Plaintiff has not identified (and the Court has not found in the record) any other specific statement that would have apprised Defendant he was seeking a *religious* accommodation related to Defendant's testing requirements. "Title VII does not grant a right to all plaintiffs fungible enough to cover anything a plaintiff dislikes in the workplace." *Id.* at *5 (quotation omitted). Accordingly, Defendant was not required to offer alternative accommodations based on Plaintiff's various non-religious objections to the nasal swab testing requirement.

Finally, Plaintiff cites his deposition testimony from May 2024 as evidence of his religious objection to nasal swab tests. (ECF No. 128 at 4-12.) But this testimony cannot support an inference that Defendant was, or should have been, aware that its testing requirements conflicted with Plaintiff's sincerely held religious beliefs when it fired him.

In the absence of any evidence that Plaintiff informed Defendant that his religious beliefs conflicted with its testing requirements, Plaintiff has failed to establish a prima facie case to support his claims for failure to accommodate with respect to the testing requirement.

    2.    <u>Disparate Treatment</u>

Plaintiff asserts a separate religious discrimination claim based on disparate treatment under Title VII, but this claim also cannot survive summary judgment.

Title VII prohibits an employer from discriminating against someone because of his religion. *See* 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination with either direct or circumstantial evidence. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136,

---

[1] The Court contrasts *Prida* because it is cited in Plaintiff's recently filed Notice of Supplemental Authority. (ECF No. 157.) The other cases cited in the Notice do not warrant further discussion here because they address religious objections to vaccination mandates, not testing requirements.

1145 (10th Cir. 2008). When a plaintiff relies on circumstantial evidence, courts use the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to determine whether the evidence raises an inference of invidious discriminatory intent sufficient to survive summary judgment. *See Adamson*, 514 F.3d at 1145. First, the plaintiff must establish a prima face case of discrimination. *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011). To establish a prima face case, a plaintiff must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the circumstances give rise to an inference of discrimination. *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021). Second, once the plaintiff makes this showing, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its action. *Simmons*, 647 F.3d at 947. Third, if the defendant proffers such reasons, the burden shifts back to the plaintiff to show they are pretextual. *Id.*

As an initial matter, the Court rejects Plaintiff's unfounded and conclusory contention that direct evidence of discrimination exists in this case. (ECF No. 128 at 19-22.) There is simply no evidence that Defendant treated Christian and non-Christian employees differently. Plaintiff's reliance on *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), is inapposite. There, certain employee privileges explicitly hinged upon the employee's age. *Id.* Plaintiff has identified no analogous policy here that is discriminatory on its face because it hinges upon an employee's religion. Instead, Plaintiff makes a convoluted argument that there is direct evidence Defendant discriminated against his religious beliefs because it "conditioned [his] religious accommodation request on [him] agreeing to give up any right to Defendant's interactive process." (ECF No. 128 at 21.) But the Court is not persuaded that Defendant's religious accommodation request form can somehow be construed as direct evidence of

11

discriminatory conduct by Defendant.  Plaintiff provides no authority supporting such an inference under analogous circumstances.

Turning to the circumstantial evidence and applying the *McDonnell-Douglas* framework, the Court finds that Plaintiff belongs to a protected class based on his religion and that his final written warning, denial of a promotion, and termination were adverse employment actions for purposes of stating a discrimination claim.  However, the Court also finds Plaintiff has not established the third element of his prima face case because he has not shown circumstances that give rise to an inference of discrimination.  He has not shown, for example, that any similarly situated employee who requested an accommodation or refused to comply with the vaccination and testing requirements was treated more favorably than he was.  He points to Defendant's announcement in March 2022 that its COVID-19 testing program would transition from mandatory to voluntary "except for colleagues who [were] required to test weekly as a condition of an approved accommodation for a company or customer vaccine mandate." (ECF No. 129-3 at 1.)  But while this change in protocol reflects that Defendant's intent to treat vaccinated and unvaccinated employees differently, such circumstances do not give rise to an inference that Defendant intended to treat any of its employees differently from Plaintiff because of their religion.  Plaintiff has adduced no other evidence that would support an inference of discrimination.

Even if Plaintiff could establish his prima facie case, he also has not shown that Defendant's stated reasons for firing him—i.e., because he failed to comply with either the vaccination requirement or the testing requirement—are pretextual.  The record is simply devoid of any evidence of discriminatory animus or other evidence that Defendant intended to

12

discriminate against Defendant because of his religion. Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claim premised on disparate treatment.

**B.      Retaliation Claims**

Plaintiff asserts two claims for retaliation under Title VII and CADA. (ECF No. 14, ¶¶ 121-37; 155-68.) The same legal standards apply to both claims. *Barrington*, 566 F. Supp. 3d at 1107 n.2; *Feltner v. Dragonfly Ent. Grp., LLC*, 607 F. Supp. 3d 1160, 1166 (D. Colo. 2022).

Title VII prohibits employers from retaliating against an employee who opposes any practice made unlawful under the statute. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff "must show (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quotation omitted). If he makes this showing, the burden shifts to the defendant to provide a legitimate and facially non-discriminatory reason for its decision. *Id.* at 1211. The plaintiff then has the burden of demonstrating that the employer's asserted reasons are pretextual. *Id.*

            1.      Protected Activity

There is no dispute that Plaintiff engaged in protected activity when he requested a religious accommodation on November 26 and complained about discrimination on March 7. (ECF No. 109 at 19.) Plaintiff asserts that his protected activities also include (1) seeking to guard his protected health information, (2) requesting a "religious exemption" (separate and apart from an accommodation) from the vaccination requirement, (3) proposing alternative accommodations to the vaccination requirement, (4) requesting the interactive process, and

13

(5) filing his EEOC charge. Except for the filing of his EEOC charge, the Court finds these actions do not constitute additional protected activities.

First, Plaintiff has not shown that either seeking to guard health information (by refusing to disclose his vaccination status) or proposing alternative accommodations constitutes opposition to a practice made unlawful by Title VII. "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [statute]." *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Plaintiff has not shown that he mentioned or alluded to religious discrimination when he expressed concerns about his privacy rights or proposed spit testing as an alternative to nasal swab testing. *See id.* at 1203 n.13. Thus, the Court concludes these general complaints related to Defendant's COVID-19 policies are not protected activities that can support a retaliation claim.

Second, Plaintiff's assertion that he requested a "religions exemption" from the vaccination requirement lacks any citation to the record. (ECF No. 128 at 27.) This alone is enough to reject it as an instance of protected activity. Moreover, Defendant concedes in its Motion that Plaintiff engaged in protected activity when he requested religious accommodation by submitting his religious accommodation request form. (ECF No. 109 at 19.) Nowhere does Plaintiff elaborate on what he means by a "religious exemption" or explain how such conduct requires further analysis beyond his request for accommodation. Therefore, the Court discerns no separate or additional protected activity associated with Plaintiff's purported request for a "religious exemption."

Last, Plaintiff cites no authority for the proposition that simply requesting the interactive process for non-religious reasons—after the employer has offered a reasonable

14

accommodation—amounts to protected activity. Protected activity occurs only when an individual opposes any act or practice made unlawful by Title VII or makes a charge, testifies, assists, or participates in an investigation, proceeding, or hearing. *See* 42 U.S.C. § 12203(a). It is not the Court's role to address employer policies that do not implicate unlawful discrimination. *See Hinds*, 523 F.3d at 1198-99.

Therefore, the Court finds Plaintiff engaged in protected activity only when he requested religious accommodation on November 26, complained about discrimination on March 7, and filed his EEOC charge on May 10.

### 2. Adverse Action

Defendant does not challenge Plaintiff's assertion that he suffered adverse actions when he (1) received a final written warning on November 23, (2) was deemed ineligible for promotion on February 25, and (3) was placed on unpaid leave on May 16 and terminated on June 22. (ECF No. 109 at 19.) The Court accepts these as each sufficient to support a retaliation claim. For present purposes, the Court also accepts Plaintiff's assertion that the high sales forecast he received in the first quarter of 2022 was an adverse action.

### 3. Causal Connection

To establish the requisite causal connection between his protected conduct and Defendant's adverse actions, Plaintiff must show that Defendant was motivated by a desire to retaliate for his protected activity or other circumstances that justify an inference of retaliatory motive. *See Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016); *Hinds*, 523 F.3d at 1203. Except for the filing of his EEOC charge and his termination, which were about a month apart, the Court finds Plaintiff has failed to state a prima facie retaliation case by

establishing a causal connection between any of his protected activities and Defendant's adverse actions.

          a.     *Final written warning*

As the timeline above shows, Plaintiff received the final written warning for his failure to comply with Defendant's disclosure requirement on November 23, the same day he requested a religious accommodation request form and three days before he submitted his completed form. Based on the sequence of these events, the final written warning is not causally related to statements he made on the form. Further, even if Plaintiff first disclosed his religion when he requested the form and his request preceded the written warning, he still has adduced no evidence from which a reasonable factfinder could conclude that the individuals who issued the written warning knew about his request. *See Hinds*, 523 F.3d at 1200-01 ("[I]nformation of which an employer is unaware cannot be inferred to be the basis for the employer's decision to take action against the employee."). The existence of a causal connection is further undermined here because by the time the final written warning was issued on November 23, Plaintiff had already been reminded about the need to comply with disclosure requirement. (*See* ECF No. 136, ¶¶ 14.) Employers are not required to suspend previously planned adverse employment actions once an employee engages in protected activity, "and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Foster*, 830 F.3d at 1192 (quotation omitted). Here, the record establishes that the disciplinary process culminating in the final written warning began before Plaintiff disclosed his religion to Defendant or sought any accommodation. Plaintiff has adduced no evidence to the contrary that would create a genuine issue for trial. Therefore, he has not established a causal connection between his protected activity and the final written warning.

b.   *Denial of promotion*

Plaintiff's causation argument regarding the denial of his promotion hinges on his contention that the final written warning was discriminatory and retaliatory. (*See* ECF No. 128 at 29 ("[T]he proper proximity to analyze as to this issue is between Plaintiff's protected activities and the Written Warning.").) Because the Court has already found there was no causal connection between Plaintiff's protected activity and the final written warning, his argument regarding his promotion necessarily fails as well.

c.   *Sales forecast*

Plaintiff contends his manager assigned him an unreasonably high sales forecast in the first quarter of 2022 but fails to make any showing as to how the sales forecast is causally connected to any of his protected conduct. According to Defendant, sales forecasts are set by a sales leadership team around September of each year and then communicated to individual managers, such as Plaintiff's manager. (ECF No. 136, ¶ 70.) Plaintiff does not attempt to refute Defendant's account of how sales forecasts are set or show that the sales leadership team knew about any of his protected activities. To the extent he argues that Defendant retaliated against him by failing to correct the sales forecast, he has adduced no evidence supporting his bare assertion that Defendant "deviat[ed] from its own internal procedures" (ECF No. 128 at 29-30) or demonstrated other circumstances justifying an inference of retaliatory motive. Causation evidence to support a retaliation claim "must be based on more than mere speculation, conjecture, or surmise." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quotation omitted). Again, there is no evidence that anyone involved with producing the sales forecast had any awareness of Plaintiff's protected activities. Accordingly, the Court finds Plaintiff has not established a prima facie case with regard to the sales forecast being a form of retaliation.

d.      *Unpaid leave and termination*

A retaliatory motive may be inferred when an adverse action closely follows protected activity, but "a three-month, period, standing alone, is insufficient to establish causation." *Foster*, 830 F.3d at 1191 (quotation omitted).  Plaintiff's termination came more than six months after he submitted his request for accommodation and more than three months after he informed Defendant he intended to file a charge of discrimination with the EEOC.  Thus, he may not rely on mere temporal proximity to establish a causal connection between these adverse actions and protected activities.  However, because he was placed on unpaid leave within a week after he filed his EEOC charge and terminated about a month later, he has established a causal connection that supports his prima facie case based on this protected activity.

4.      Pretext

Because Plaintiff has established a prima facie case of retaliation premised on the filing of his EEOC charge and Defendant has provided a facially nondiscriminatory explanation for firing him—i.e., failing to comply with either the vaccination or testing requirement—Plaintiff must establish a genuine dispute as to whether Defendant's conduct was pretextual.  He has not done so.

While Plaintiff's unpaid leave and termination closely following the filing of his EEOC charge suffices to establish his prima facie case, it is not enough to show that Defendant's stated reasons for firing him are unworthy of belief.  If that were the case, simply filing an EEOC charge would insulate an employee from discharge or disciplinary action.  At the time he was placed on unpaid leave, Plaintiff had already received multiple warnings about his failure to comply with Defendant's vaccination and testing policies.  (ECF No. 136, ¶¶ 72, 73, 74.)  He received at least one additional warning before he was terminated.  (*Id.* at ¶ 76.)  Thus, these

18

adverse actions were in accordance with a disciplinary process set in motion before he filed his EEOC charge. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *see also Foster*, 830 F.3d at 1192. Plaintiff has adduced no evidence from which a reasonable factfinder could conclude that Defendant's stated reason for firing him "is so inconsistent and contradictory as to be unworthy of belief." *Foster*, 830 F.3d at 1194. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claims premised on the filing of his EEOC charge.

Moreover, even if Plaintiff had presented a prima facie case of retaliation based on his other protected activities—i.e., filing an accommodation request and declaring his intent to file an EEOC charge—his claims still fail because he also has not shown that Defendant's stated reasons for its decisions following these activities were pretextual. It is undisputed that Plaintiff failed to comply with the disclosure requirement, which is what prompted Defendant to issue the final written warning. It is also undisputed that Defendant followed its own policy—set forth in the final written warning—when it denied him a promotion less than a year later. Also, Plaintiff has adduced no evidence that his sales forecast resulted from alleged procedural irregularities that might show it was pretext for discrimination. Consequently, Plaintiff's failure to show that Defendant's proffered reasons for its actions were pretextual provides an additional basis to dismiss his retaliation claims based on these protected activities.

   C. **Wrongful Termination Claims**

Plaintiff asserts two claims for wrongful termination based on theories of breach of employment policy (ECF No. 14, ¶¶ 169-174) and violation of public policy (*id.* at ¶¶ 175-85). Defendant argues that the first claim fails because, inter alia, the religious accommodation request form on which he relies is not a contract. (ECF No. 109 at 24.) Defendant argues that the second claim fails because, inter alia, Defendant never directed Plaintiff to perform an illegal

19

act. (*Id.* at 27.) Plaintiff addresses neither of these arguments in his Response; indeed, his wrongful termination claims are not mentioned at all. The Court finds there is no genuine dispute of material fact as to these claims, and Defendant is entitled to summary judgment in its favor.

**IV.   CONCLUSION**

Defendant's Motion (ECF No. 109) is GRANTED, Plaintiff's Motion (ECF No. 147) is DENIED AS MOOT, and the Clerk is directed to CLOSE this case.

DATED this 9th day of December, 2025.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge